IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 16, 2021 Session

## TIMOTHY ROSEBROUGH v. KAREN CALDWELL F/K/A KAREN ROSEBROUGH

**Appeal from the Chancery Court for Madison County**
**No. 66696     William B. Acree, Senior Judge**

———————————————————

**No. W2020-00538-COA-R3-CV**

———————————————————

In this post-divorce case, Mother appeals the trial court's denial of her motion to modify the permanent parenting plan to designate her as the Child's primary residential parent. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and CARMA DENNIS MCGEE, J., joined.

Karen Caldwell, Jackson, Tennessee, appellant, pro se.

Lisa A. Houston, Jackson, Tennessee, for the appellee, Timothy S. Rosebrough.

## OPINION

### I. Background

This protracted child custody dispute between Appellant Karen Caldwell ("Mother") and Appellee Timothy Rosebrough ("Father") has been pending since 2015, and this is the third appeal to this Court.[1] The record is voluminous, so in the interest of judicial economy, we will discuss only those facts and proceedings that are relevant to the instant appeal.

---

[1] Mother's first appeal in 2011 was dismissed for failure to file an appellate brief.

On November 9, 2010, the Chancery Court for Madison County ("trial court") entered an order declaring Mother and Father divorced. At that time, the trial court entered a permanent parenting plan (the "parenting plan") concerning the parties' minor child, A.R. (d/o/b January 2008) (the "Child"). The parenting plan designated Father the primary residential parent and awarded him sole decision-making authority over educational, non-emergency healthcare, and religious decisions for the Child. Under the parenting plan, Father was awarded 280 days with the Child, and Mother was awarded 85 days.

On November 9, 2015, Mother filed a motion to modify the parenting plan to designate her as the Child's primary residential parent. On December 9, 2015, Father filed a response in opposition to Mother's motion. The trial court heard Mother's motion on October 18, 2017, November 14, 2017, and December 1, 2017. Nineteen witnesses testified, including: (1) the parties; (2) Thomas Rosebrough, the Child's paternal grandfather; and (3) Traci Schott, the Child's therapist. In addition, thirty exhibits were entered into evidence. On the final day of trial, the parties agreed to modify the parenting schedule to provide Mother more visitation with the Child. On December 11, 2017, the trial court entered a temporary order amending the visitation schedule. On December 29, 2017, the trial court issued its findings of facts and conclusions of law, wherein it recounted, with specificity, the testimony adduced at trial before concluding that: (1) Mother failed to meet her burden to show a material change in circumstances that would warrant altering the Child's primary residential parent; (2) even if Mother established a material change in circumstances, she failed to show that such modification was in the Child's best interest; and (3) Mother carried her burden of proof to show that the parenting plan should be amended to provide her more visitation with the Child. The trial court also awarded Father a portion of his requested attorney's fees. On January 30, 2018, before the trial court entered its final order, Mother filed a motion to alter or amend or, alternatively, for a new trial.

On March 9, 2018, the trial court entered its final order. In the order, the trial court reiterated many of the findings it made in the December 29, 2017 findings of facts and conclusions of law and again held that: (1) Mother failed to establish a material change in circumstances to warrant altering the Child's primary residential parent; (2) even if Mother established a material change in circumstances, it was in the Child's best interest for Father to remain the primary residential parent; (3) Mother met her burden of proof to show that the parenting schedule should be amended; and (4) Mother should pay $7,5000.00 towards Father's attorney's fees. The trial court's order incorporated the amended parenting plan expanding Mother's visitation with the Child to 105 days.

On April 6, 2018, Mother filed an amended motion to alter or amend or, alternatively, for a new trial. On May 8, 2018, Father filed a response in opposition to Mother's motion. By order entered May 24, 2018, the trial court denied Mother's motion. On June 20, 2018, Mother filed her notice of appeal.

On December 18, 2019, this Court filed its opinion in ***Rosebrough v. Caldwell***, No. W2018-01168-COA-R3-CV, 2019 WL 6898218 (Tenn. Ct. App. Dec. 18, 2019) ("***Rosebrough I***"). In ***Rosebrough I***, Mother raised two issues for review: (1) whether the trial court erred when it found that Mother had not proven, by a preponderance of the evidence, a material change in circumstances sufficient to warrant altering the primary residential parent designation; and (2) whether the trial court erred in finding that, even if there was a material change in circumstances, it was in the Child's best interest that Father remain the primary residential parent. ***Id.*** at \*3. As to the first issue, the ***Rosebrough I*** Court concluded that the trial court failed to make sufficient findings of fact and conclusions of law concerning its determination that Mother failed to meet her burden to show a material change in circumstances. ***Id.*** at \*4. Accordingly, the Court vacated the portion of the trial court's order "concerning Mother's motion to modify the permanent parenting plan by designating her the primary residential parent" and remanded the case for the trial court "to make sufficient findings of fact regarding the evidence presented during trial and to make conclusions of law based on those facts." ***Id.*** at \*5. Because neither party raised the issue on appeal, the ***Rosebrough I*** Court affirmed the trial court's modification of the parenting schedule. ***Id.*** Having vacated the portion of the trial court's order denying Mother's motion to modify the permanent parenting plan to designate her the primary residential parent, the Court did not reach the issue of whether the trial court erred in its best interest analysis. ***Id.***

On remand from ***Rosebrough I***, on December 19, 2019, Mother filed a motion for contempt. On February 7, 2020, Father filed a response to Mother's motion along with a counter-motion for contempt. On March 11, 2020, the trial court entered an amended order, wherein it made additional findings of fact and conclusions of law in compliance with this Court's mandate in ***Rosebrough I***. The trial court again held that: (1) Mother failed to meet her burden to show a material change of circumstances such that she should be named the Child's primary residential parent; and (2) even if there was a material change in circumstances, it was in the Child's best interest that Father remain her primary residential parent. Also, on March 11, 2020, the trial court entered an order stating that it would conduct a hearing on the parties' cross-motions for contempt after appellate review of the case was complete. Mother appeals.

## II. Issues

As an initial matter, Mother raises several issues in this appeal that she did not raise in ***Rosebrough I***; these issues include:

1.  Whether the trial court erred in denying her request to enter certain text messages into evidence at trial.

2.  Whether the trial court erred in failing to make credibility determinations

concerning Traci Schott and Thomas Rosebrough.

3. Whether the trial court erred in awarding Father a portion of his attorney's fees.

This Court has held that a party waives the right to seek appellate review in the second appeal of an issue not raised in the first appeal. *See Melton v. Melton*, No. M2003-01420-COA-R10-CV, 2004 WL 63437, at *3 (Tenn. Ct. App. Jan. 13, 2004); *see also Moore v. Taylor*, No. M2013-01590-COA-R3-CV, 2014 WL 2999744, at *3 (Tenn. Ct. App. June 30, 2014) ("We find that Wife waived her right to seek appellate review concerning either alimony or attorney's fees by not raising them on the first appeal."). As discussed, *supra*, the two issues Mother raised for review in *Rosebrough I* were: (1) whether the trial court erred in finding that Mother failed to prove a material change in circumstances; and (2) whether the trial court erred in finding that it was in the Child's best interest for Father to remain the primary residential parent. *Rosebrough I*, 2019 WL 6898218, at *3. Because Mother failed to raise the three issues set out above for review in *Rosebrough I*, she has waived her right to seek appellate review of these issues in the instant appeal.[2]

We restate Mother's remaining issues as follows:

1. Whether, on remand from *Rosebrough I*, the trial court erred in ordering that it would hear the parties' motions for contempt after appellate review concluded.

2. Whether the trial court erred in finding that Mother failed to establish a material change in circumstances to warrant modifying the parenting plan to name her the Child's primary residential parent.[3]

---

[2] At oral argument in this appeal, Mother stated that she argued the issue of attorney's fees in the body of her brief for *Rosebrough I* but admitted that she failed to list it as an issue in the statement of the issues section of her brief. Tennessee Rule of Appellate Procedure 27(a)(4) provides that an appellant's brief *shall* contain "[a] statement of the issues presented for review." Tenn. R. App. P. 27(a)(4). Any issue not included in the statement of issues presented for review as required by Tennessee Rule of Appellate Procedure 27(a)(4), is not properly before the Court of Appeals. *Hawkins v. Hart*, 86 S.W.3d 522, 531 (Tenn. Ct. App. 2001). Accordingly, even if Mother argued the issue of Father's attorney's fees in the body of her first appellate brief, by failing to include it as an issue in the statement of the issues portion of her brief, Mother waived her right to dispute the same in *Rosebrough I*. Further, as discussed, *supra*, because Mother failed to raise the issue of Father's attorney's fees and/or waived her right to dispute the same in *Rosebrough I*, this issue is not properly before this Court on the second appeal.

[3] We note that Mother lists as her first issue: "Whether the trial court erred by modifying the permanent parenting plan while holding that Father did not establish a material change in circumstances where Mother's material change was agreed upon by both parties." In her brief, the majority of Mother's argument regarding the parenting plan concerns the trial court's denial of her request to be named the primary residential parent. However, Mother briefly addresses her request to modify the residential parenting schedule, which the trial court granted and this Court affirmed in *Rosebrough I*. To the extent Mother now argues that the trial court erred in entering the new parenting schedule, we do not address this

- 4 -

3. Whether the trial court erred in finding that it was in the Child's best interest for Father to remain the primary residential parent.

## III. Standard of Review

We review a non-jury case "*de novo* upon the record with a presumption of correctness as to the findings of fact, unless the preponderance of the evidence is otherwise." **Bowden v. Ward**, 27 S.W.3d 913, 916 (Tenn. 2000) (citing Tenn. R. App. P. 13(d)). The trial court's conclusions of law are reviewed *de novo* and "are accorded no presumption of correctness." **Brunswick Acceptance Co., LLC v. MEJ, LLC**, 292 S.W.3d 638, 642 (Tenn. 2008).

Furthermore, while we are cognizant of the fact that Mother is representing herself in this appeal, it is well-settled that "pro se litigants are held to the same procedural and substantive standards to which lawyers must adhere." **Brown v. Christian Bros. Univ.**, 428 S.W.3d 38, 46 (Tenn. Ct. App. 2013). This Court has held that "[p]arties who choose to represent themselves are entitled to fair and equal treatment by the courts." **Hodges v. Tenn. Att'y Gen**., 43 S.W.3d 918, 920 (Tenn. Ct. App. 2000) (citing **Paehler v. Union Planters Nat'l Bank, Inc**., 971 S.W.2d 393, 396 (Tenn. Ct. App. 1997)). Nevertheless, "courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe." **Young v. Barrow**, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003) (citing **Edmundson v. Pratt**, 945 S.W.2d 754, 755 (Tenn. Ct. App. 1996); **Kaylor v. Bradley**, 912 S.W.2d 728, 733 n.4 (Tenn. Ct. App. 1995)). With the foregoing in mind, we turn to address the substantive issues.

## IV. Analysis

## A. Motions for Contempt

As a threshold matter, Mother argues that the trial court erred in postponing the hearing on the parties' competing motions for contempt until after appellate review concluded. Specifically, "Mother asserts [that] the trial court has jurisdiction and the duty to hear [m]otions on [c]ontempt issues, regardless of a pending appeal." In the first instance, we note that Mother fails to cite any law in this section of her brief to support her argument. *See* Tenn. R. App. P. 27(a)(7)(A) (explaining that an appellant's brief shall contain "[a]n argument . . . setting forth the contentions of the appellant with respect to the

---

issue in the instant appeal as we decided it previously in **Rosebrough I**. *See* **Memphis Publ'g Co. v. Tennessee Petroleum Underground Storage Tank Bd.**, 975 S.W.2d 303, 306 (Tenn. 1998) ("[W]hen an initial appeal results in a remand to the trial court, the decision of the appellate court establishes the law of the case which generally must be followed upon remand by the trial court, and by an appellate court if a second appeal is taken from the judgment of the trial court entered after remand.").

issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, **with citations to the authorities** . . . relied on.") (emphasis added). Although Mother's failure to comply with the Tennessee Rules of Appellate Procedure concerning briefing requirements could constitute a waiver of this issue, **Waters v. Farr**, 291 S.W.3d 873, 919 (Tenn. 2009) (Koch, J. concurring and dissenting) ("[A]ppellate courts may properly decline to consider issues that have not been raised and briefed in accordance with the applicable rules."), in the interest of full adjudication, we exercise our discretion to proceed with a brief discussion of this issue. Tenn. R. App. P. 2 ("For good cause, including the interest of expediting decision upon any matter, the . . . Court of Appeals . . . may suspend the requirements or provisions of any of these rules in a particular case . . . in accordance with its discretion . . . .").

As an initial matter, Mother is correct that the trial court "retained jurisdiction . . . to hear [the] [m]otions on contempt issues, regardless of a pending appeal." Indeed, it is well settled that a court's authority to punish contemptuous conduct is broad and continuing. *See **Malmquist v. Malmquist***, 415 S.W.3d 826, 842 (Tenn. Ct. App. 2011) (holding that because an ordered obligation was ongoing, "the trial court had broad authority to punish a party for violating it at *anytime* those violations were brought before the court") (emphasis added). Furthermore, a contempt petition is not a part of the remanded action; rather, "a contempt proceeding is sui generis and is considered incidental to the case out of which it arises, and often stems from an underlying proceeding that is not complete." **Doe v. Bd. of Pro. Resp. of Supreme Ct. of Tennessee**, 104 S.W.3d 465, 474 (Tenn. 2003). Accordingly, the fact that an appeal is filed does not prevent the trial court from hearing a contempt petition. *See **Hopwood v. Hopwood***, No. M2016-01752-COA-R3-CV, 2017 WL 2964886, at *1 (Tenn. Ct. App. July 12, 2017) (involving contempt petitions filed while a case was on appeal); **Cremeens v. Cremeens**, No. M2014-01186-COA-R3-CV, 2015 WL 4511921, at *2 (Tenn. Ct. App. July 24, 2015) (same). Nonetheless, although the trial court was not precluded from hearing the issue of contempt after the appeal was filed, contrary to Mother's assertion, it was not required to hear the contempt petitions immediately upon filing of the parties' motions. Rather, because "contempt proceedings are collateral to and independent of the cases or proceedings from which they arise," **Poff v. Poff**, No. 01-A-01-9301-CV00024, 1993 WL 73897, at *2 (Tenn. Ct. App. Mar. 17, 1993) (citations omitted), and because the trial court's authority to punish contemptuous conduct is broad and continuing, *Malmquist*, 415 S.W.3d at 842, the trial court may, in its discretion, choose to address the issue of contempt at **anytime** after the issue is raised. *Id.* Under the particular circumstances of this case, the trial court's decision to postpone a hearing on the cross-motions for contempt pending adjudication of this appeal was not error.

### B. Motion to Modify Primary Residential Parent Designation

Turning to the remaining issues concerning the trial court's denial of Mother's motion to modify the permanent parenting plan to designate her as the Child's primary

residential parent, we first note that Mother's request to change the Child's primary residential parent constitutes a request to modify child custody. *See **Burnett v. Burnett***, No. M2014-00833-COA-R3-CV, 2015 WL 5157489, at *6 (Tenn. Ct. App. Aug. 31, 2015) (explaining that "[i]f a parent requests a modification of custody" that is "also known as a change in the primary residential parent"). When considering a motion to modify child custody, the threshold question a court must answer is whether there has been a material change in circumstances since the entry of the existing parenting plan. *See **C.W.H. v. L.A.S.***, 538 S.W.3d 488, 496 (Tenn. 2017). The party seeking to modify the existing parenting plan bears the burden to prove this material change by a preponderance of the evidence. Tenn. Code Ann. § 36-6-101(a)(2)(B). If a court finds there has been a material change in circumstances, then it must decide whether modification of the parenting plan is in the child's best interest. If the court finds that there has been no material change in circumstances, it "is not required to make a best interest[] determination and must deny the request for a change of custody." **Pippin v. Pippin**, 277 S.W.3d 398, 405 (Tenn. Ct. App. 2008) (quoting **Caudill v. Foley**, 21 S.W.3d 203, 213 (Tenn. Ct. App. 1999)). Mother argues the trial court erred in finding that she failed to carry her burden to establish a material change in circumstances, and in its finding that it was in the Child's best interest for Father to remain the primary residential parent.

Turning to the question of a material change in circumstances, we first note that courts are generally reluctant to change initial custody determinations unless it is clear that modification is necessary. **Canada v. Canada**, No. W2014-02005-COA-R3-CV, 2015 WL 5178839, at *4 (Tenn. Ct. App. Sept. 4, 2015); *see **Curtis v. Hill***, 215 S.W.3d 836, 840 (Tenn. Ct. App. 2006) ("Because children are more likely to thrive in a stable environment, the courts favor existing custody arrangements."). Although "[t]here is no 'bright line' test for determining whether a material change of circumstances has occurred," **Canzoneri v. Burns**, No. M2020-01109-COA-R3-CV, 2021 WL 3399860, at *6 (Tenn. Ct. App. Aug. 4, 2021) (citing **McClain v. McClain**, 539 S.W.3d 170, 188 (Tenn. Ct. App. 2017)), courts are guided by statutory and case law. Tennessee Code Annotated section 36-6-101(a)(2)(B) provides that a material change in circumstances "may include, but is not limited to, failures to adhere to the parenting plan or an order of custody and visitation or circumstances that make the parenting plan no longer in the best interest of the child." Tenn. Code Ann. § 36-6-101(a)(2)(B). Reviewing courts should also consider the following principles when determining whether there has been a material change in circumstances:

> First, the change of circumstances must involve either the child's circumstances or a parent's circumstances that affect the child's well-being. Second, the changed circumstances must have arisen after the entry of the custody order sought to be modified. Third, the changed circumstances must not have been reasonably anticipated when the underlying decree was entered. Fourth, the change in circumstances must affect the child's well-being in some material way.

*Canzoneri*, 2021 WL 3399860, at *6 (citing *McClain*, 539 S.W.3d at 188). Whether a material change in circumstances has occurred is a factual question and one that appellate courts presume the trial court correctly determined unless evidence in the record preponderates otherwise. *Armbrister v. Armbrister*, 414 S.W.3d 685, 692-93 (Tenn. 2013) (internal citations omitted); *see also* Tenn. R. App. P. 13(d).

Mother's argument that there had been a material change in circumstances was predicated on nine allegations: (1) Father's marriage to a woman Mother alleged was not a suitable parent; (2) Mother's stable mental health; (3) Father's and his family's parental alienation of Mother; (4) Mother's regaining custody of her other daughter (the Child's half-sister); (5) Mother's permanent part-time job; (6) Father's volatile employment status; (7) the stability of Mother's relationship with her significant other; (8) the constant degrading, hatred, belittling, and ugliness from Father and his family; and (9) Father's behavior towards Mother as it related to the Child. As an initial matter, in its amended order, the trial court found that these allegations were either untrue (with the exception of the parties' mutual dislike for each other) or irrelevant to a material change in circumstances analysis. Similarly, the trial court found that, even if these allegations were true, they would not constitute a material change in circumstances. In addition to these findings, the trial court made the following findings of fact and conclusions of law concerning Mother's failure to prove a material change in circumstances, to-wit:

> 3. The [c]ourt finds that the testimony of [Mother], [Father], and the comprehensive forensic evaluation of Dr. John W. Ciocca establishes an obsession by [Mother] to be designated as the Primary Residential Parent. [Mother] constantly questions her daughter about her desire to spend more time with her thereby creating a discomfort in the daughter. Such obsession appears to be a motivating factor in this litigation.

> 4. The [c]ourt finds that although there is constant bickering between the parents, there has been no failure by [Father] to adhere to the Parenting Plan. [Father] testified that he gave extra visitation time to [Mother] and kept her informed of the [C]hild's extracurricular activities. This is disputed by [Mother]. However, the [c]ourt finds [Father]'s testimony to be more credible. Additionally, [Father] agreed at trial to a modification of the Parenting Plan to give [Mother] an additional 20 days.

> 5. The [c]ourt finds that [Mother] has skipped parenting time on numerous occasions and also is inconsistent in attending extracurricular activities of the [C]hild.

***

7. The [c]ourt finds the [C]hild has lived with [Father] practically all of her life. [Father] and his wife own their own home in Medina, TN. The home is in a good neighborhood and is about ten minutes from the [C]hild's school. The [C]hild does well in school, participates in extracurricular activities such as soccer, and is in a stable environment. [Father] attends all of her events, and [Father] is one of her soccer coaches.

8. . . . Dr. Ciocca concluded that while both parents are fit to care for their daughter, the daughter demonstrated a stronger attachment to her father based on his years of care for her . . . .

9. The [c]ourt finds that [Mother] has failed to establish a material change in circumstances . . . .

***

In conclusion, the [c]ourt finds that [Father] has been the Primary Residential Parent of the parties['] daughter since [Justice] Page's order of November 9, 2010. There is nothing in the record to suggest that he has failed to fulfill his responsibilities as the Primary Residential Parent or that it would be in the [C]hild's best interest to designate [Mother] as such. [Mother] has failed to establish her burden of proof to show a change of material circumstance which would warrant the Parenting Plan to be modified to designate her as the Primary Residential Parent.

We briefly note that our review of the evidence presented to the trial court is necessarily limited. Although the appellate record contains a statement of the evidence for the first day of trial, absent from the record is a transcript or statement of the evidence for the second and third days of trial. *See* Tenn. R. App. P. 24. Accordingly, our review is confined to the evidence adduced on the first day of trial, and we must presume that there was sufficient evidence to support any findings the trial court made based on evidence adduced at the second and third days of trial. ***PNC Multifamily Capital Inst. Fund XXVI Ltd. P'ship v. Mabry***, 402 S.W.3d 654, 661 (Tenn. Ct. App. 2012), *perm. app. denied* (Tenn. Apr. 10, 2013); ***Outdoor Management LLC v. Thomas***, 249 S.W.3d 368, 377 (Tenn. Ct. App. 2007); ***Sherrod v. Wix***, 849 S.W.2d 780, 783 (Tenn. Ct. App. 1992).

Turning to the statement of the evidence for the first day of trial, the Child's therapist, Ms. Schott, provided testimony that supports the trial court's finding that Mother's obsession to be named the primary residential parent is the driving factor in this litigation. Specifically, Ms. Schott testified that the Child felt like "her mother was asking her too many questions when [the Child] visited her. The questions involved where [the Child] wanted to live, and whether she wanted to switch schools to be with her sister." Ms. Schott reported that the Child "felt stuck because she didn't want to hurt her mother's

feelings or anyone's feelings." Ms. Schott further testified that the Child expressed to her that "she would like less time with [M]other without any prompting and in conjunction with statements about being uncomfortable." Ms. Schott's testimony is substantiated by Dr. Ciocca's Comprehensive Forensic Custody Evaluation, which was entered into evidence by stipulation. In his summary and recommendations, Dr. Ciocca opined that neither party demonstrated any "limitations or problems in [their] psychological functioning that would limit their ability to care for their daughter." Nevertheless, Dr. Ciocca found that the Child "demonstrate[d] a strong attachment to [Father] based on his years of care for her." Although the Child "demonstrate[d] adequate attachment" to Mother, Dr. Ciocca opined that Mother's "consistent questioning" made the Child "somewhat anxious about the process of visitation." Specifically, Dr. Ciocca found that Mother's "intense interest in acquiring more extensive parenting time has caused her at times to be overly involved in questioning her daughter about her desire to spend more time with her." Dr. Ciocca further opined that Mother's "intense focus on these issues have created discomfort in her daughter." Despite the foregoing, Dr. Ciocca found that the Child was

> a well[-]developed, well nourished young girl, who indicated that she likes her school and enjoys her work. Review of her school records indicated that she receives mostly A's in her subjects and has a positive behavior record. She reported that she has friends and enjoys after school activities. There were no indications of any unusual behavioral patterns.

It appears that the evidence that would support the trial court's remaining findings of fact was heard by the trial court on the second and third days of trial. Specifically, the majority of Father's and his wife's testimony and all of Mother's testimony fell on these days. Without a transcript or statement of the evidence for the second and third days of trial, we must conclude that the trial court's following findings are conclusive: (1) Father has adhered to the parenting plan and has kept Mother informed of the Child's extracurricular activities; (2) Father has given Mother extra parenting time; (3) Father's testimony concerning the parenting plan and providing Mother with extra parenting time was more credible than Mother's testimony on the same;[4] (4) Mother has skipped parenting time on numerous occasions and has been inconsistent in attending the Child's

---

[4] We note that, because "trial courts are able to observe witnesses as they testify and to assess their demeanor, . . . trial judges [are best suited] to evaluate witness credibility." **Wells v. Tennessee Bd. of Regents**, 9 S.W.3d 779, 783 (Tenn. 1999) (citing **State v. Pruett**, 788 S.W.2d 559, 561 (Tenn. 1990); **Bowman v. Bowman**, 836 S.W.2d 563, 566 (Tenn. Ct. App. 1991)); *see also* **Richards v. Liberty Mut. Ins. Co.**, 70 S.W.3d 729, 733 (Tenn. 2002) ("As this Court has repeatedly emphasized, a reviewing court must give 'considerable deference' to the trial judge with regard to oral, in-court testimony as it is the trial judge who has viewed the witnesses and heard the testimony."). To this end, "appellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary." **Wells**, 9 S.W.3d at 783 (internal citations omitted). Accordingly, we do not disturb the trial court's finding that Father's testimony was more credible than Mother's.

extracurricular activities; (5) the Child has resided with Father almost her entire life; (6) Father and his wife own their home, which is in a good neighborhood and about ten minutes away from the Child's school; (7) the Child is succeeding academically, is involved in extracurricular activities, and is in a stable environment; and (8) Father attends all of the Child's events and is one of her soccer coaches.

The foregoing evidence supports the trial court's findings of fact and conclusions of law. Indeed, there is nothing in the record to suggest a material change in circumstances has occurred such that the Child's primary residential parent designation should change from Father to Mother. According to the record, the Child has lived with Father, and he has been her primary residential parent, for eleven years. Based on these years of care, it is clear from the record that, although the Child has an attachment to Mother, she has demonstrated a stronger attachment to Father. Father has provided the Child with a stable home environment, and, as a result, the Child is well-developed, succeeding academically, and happy in Father's home. *See* **Canzoneri**, 2021 WL 3399860, at *6 (citing **McClain**, 539 S.W.3d at 188). Father has also taken an active role in the Child's extracurricular activities. As the primary residential parent, Father has adhered to the permanent parenting plan and has even allowed Mother extra parenting time with the Child. *See* Tenn. Code Ann. § 36-6-101(a)(2)(B). Conversely, the record shows that Mother remains inconsistent in exercising her parenting time with the Child and in attending the Child's extracurricular activities. From the totality of the circumstances and the record as a whole, we conclude that the trial court correctly held that Mother failed to show a material change in circumstances to warrant altering the primary residential parent designation.

As discussed, *supra*, and as we explained in **Rosebrough I**, "a trial court does not proceed to conduct the best interest analysis unless the [trial] court finds that the petitioner has proven by a preponderance of the evidence that a material change in circumstances exists." **Rosebrough**, 2019 WL 6898218, at *4 (citing **Pankratz v. Pankratz**, No. M2017-00098-COA-R3-CV, 2017 WL 4842400, at *4 (Tenn. Ct. App. Oct. 25, 2017) ("[O]nly after making the threshold determination that a material change in circumstances has occurred, may the trial court turn to consider whether modification of an existing parenting plan is in the child's best interest.") (citing Tenn. Code Ann. § 36-6-101(a)(2)(C))). We note that, although it found that Mother failed to prove a material change in circumstances, the trial court nevertheless conducted a best interest analysis in the event this Court reversed the trial court on the first prong of the analysis. Because we affirm the trial court's conclusion that Mother failed to demonstrate a material change in circumstances, we do not review the trial court's best interest analysis. *See* **Rosebrough**, 2019 WL 6898218, at *4; **Pankratz**, 2017 WL 4842400, at *4.

## V. Conclusion

For the foregoing reasons, we affirm the trial court's order. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs

of the appeal are assessed to the Appellant, Karen Caldwell.  Because Karen Caldwell is proceeding *in forma pauperis* in this appeal, execution for costs may issue if necessary.

s/ Kenny Armstrong<br>
KENNY ARMSTRONG, JUDGE